WILLIAM B. WADSWORTH, as executor, &c., of Mary E. Baldwin, deceased,

*v.*

ABBIE O. BALDWIN et al.

[Decided February 3d, 1912.]

1. Where all the parties interested in a fund appear and are heard, an executor or trustee may consent to receive directions for anticipatory payment, but not so where there is any contingency as to the person or persons who may be entitled to the principal, in which case the premature decision would not be binding on the persons subsequently claiming interests in the fund.

2. When the time for payment of a fund fixed by will arrives, the court, on application of the executor, will direct its disposition, on notice to the person or persons by or on whose behalf claim has been made therefor, and, in the absence of any such claim, on notice given to the attorney-general, as representing the public interest in charitable gifts.

---

Heard on bill and answers.

*Mr. Arthur Lovell,* for the complainant.

*Mr. Walter L. Glenney* and *Mr. Howard P. Castle* (of the Chicago bar), for the defendants, Abbie O. Baldwin and others.

EMERY, V. C.

On this bill filed by an executor and trustee for instructions, one question undisposed of at the hearing was in reference to the payment of the following bequest.

By the will the executor, after making certain payments, was directed to convert the remaining property into cash, and divide the proceeds among legatees named, according to certain proportions. One of the legacies was:

"To my uncle John O. Niles one-twentieth, at his death to go to Home and Foreign Missions.

"The residue of my estate I bequeath to my son Hugh Baldwin for his life, principal to go to his heirs."

John O. Niles, the life tenant, is still living, but his life interest has been assigned to (or for the benefit of) the widow of Hugh Baldwin, who is entitled to the residue.

The executor applies for directions as to whether he can now pay this principal sum over to the person entitled to the residuary estate.

(1) The residuary legatee claims that the gift over is void as a charitable gift for the reason that no definite trustee is named for the distribution of the charitable funds, and the residuary legatee is therefore entitled to the principal upon the death of Niles. No claim has yet been made by or on behalf of any person or persons (other than the residuary legatee) of any right to or interest in this principal fund after Niles's death. The residuary legatee offers at the hearing to pay the principal of the legacy at once and without waiting for Niles's death, if the bequest is valid, but counsel of both the residuary legatee and the executor claim that the bequest of the principal is void, and no interest adverse to this contention appears.

A preliminary question arises as to whether, in advance of the time when the principal is disposed of by the will, the court

should undertake to decide the question. Where all parties interested in the fund appear and are heard, an executor or trustee may, I think, consent to receive directions for anticipatory payment, but where there is any contingency as to the person or persons who may be entitled to the principal, the court will not decide as to the disposition of the fund until it is ready for payment. Such premature decision would not be binding upon the persons subsequently claiming interests.

I have referred to the authorities settling the general rule in New Jersey, in *Kidder's Executors* v. *Kidder (1903), 56 Atl. Rep. 154.* When the time for payment of the fund fixed by the will arrives, then the court will, on the application of the executor, direct its disposition, on notice to the person or persons by or on whose behalf claim has then been made, and, in the absence of any such claim, probably requiring notice to be given to the attorney-general as representing the public interest in charitable gifts.

Circumstances also appear in the case which give rise to a doubt whether before directing payment of the fund special notice should not be also given to the Board of Home Missions and Board of Foreign Missions connected with the Presbyterian Church, in case they have not made a claim. It appears by the bill and answer that the testatrix was for a long time a member of that church and active in its benevolent work and a generous contributor thereto. Two of these charities were Home and Foreign Missions, gifts to which were administered by the "Board of Home Missions" and "Board of Foreign Missions." It has been held that a bequest divided "between the Board of Foreign Missions and the Board of Home Missions," made by a testator who was a member of the Presbyterian Church, was valid and not void by reason of failure to name a trustee. *Gilmer* v. *Stone, 120 U. S. 586.*